UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HELEN JARVIS,

   Plaintiff,

v.

                  Case No.: 8:17-cv-296-T-24-JSS

GEOVERA SPECIALTY INSURANCE
COMPANY,

   Defendant,
_____/

**O R D E R**

   This cause comes before the Court on a Motion for Summary Judgment filed by Defendant GeoVera Specialty Insurance Company ("GeoVera") (Doc. 14), Plaintiff Helen Jarvis's Response in Opposition to the Motion for Summary Judgment (Doc. 19), GeoVera's reply to Jarvis's Response (Doc. 25), and Jarvis's Sur-Reply thereto (Doc. 27). This is a breach of contract action, removed from state court, which arises from GeoVera's refusal to provide insurance coverage to Jarvis after a home owned by Jarvis, and insured by GeoVera, was destroyed by fire.

   The GeoVera policy at issue contains an exclusion for loss of a dwelling caused by vandalism or malicious mischief if the dwelling has been vacant or unoccupied for more than 30 days prior to the loss. There is, however, an exception to the exclusion that states that a "dwelling being constructed" is not considered vacant or unoccupied.

   The undisputed facts show that the subject dwelling was unoccupied for more than 30 days before the fire while Jarvis was renovating, repairing and/or refurbishing the dwelling.

1

Because the Court concludes that these renovations, repairs and/or refurbishments do not qualify for the "dwelling being constructed" exception, the exclusion applies, and GeoVera is entitled to summary judgment.

I.     **Background**

Jarvis owned the subject property and dwelling, located in Plant City, Florida (the "Dwelling"). (Doc. 14, p. 2; Doc. 19, p. 2). On October 12, 2016, the Dwelling was damaged when vandals illegally and intentionally set fire to the Dwelling. (Doc. 14, pp. 3–4; Doc. 19, pp. 4–5). Before the fire, the Dwelling had been rented to a tenant. (Doc. 14, p. 2; Doc. 19, p. 2). The tenant vacated the Dwelling on June 30, 2016. (Doc. 14, p. 2; Doc. 19, p. 2). After the tenant moved out, Jarvis and her children began renovating, repairing and/or refurbishing the Dwelling. (Doc. 14, p. 8; Doc. 19, p. 2). According to Jarvis, they were replacing drywall in the laundry room and bathroom, replacing the plumbing, including new piping through the attic and in the house, and repairing a roof leak. (Doc. 19, p. 2). No one lived in the Dwelling from June 30, 2016, the date the tenant moved out, through October 12, 2016, the date of the fire. (Doc. 14, p. 1; Doc. 19, p. 2).

GeoVera issued a homeowners insurance policy (the "Policy") to Jarvis, which insured the Dwelling. (Doc. 14, p. 2; Doc. 19, p. 1). The Policy contains an exclusion that precludes coverage for losses caused by "[v]andalism and malicious mischief, if the dwelling has been 'vacant' or 'unoccupied' for more than 30 consecutive days immediately before the loss" (the "Vacancy Exclusion"). (Doc. 14-1, p. 50). The Policy defines "Vacant" to mean "the dwelling lacks the necessary amenities, adequate furnishings, or utilities and services to permit occupancy of the dwelling as a residence." (Doc. 14-1, p. 48). "Unoccupied" means "the dwelling is not being inhabited as a residence." (Doc. 14-1, p. 48). An exception to the Vacancy Exclusion states

that "[a] dwelling being constructed is not considered 'vacant' or 'unoccupied.'" (Doc. 14-1, p. 50). The Policy does not define "construct" or "being constructed."

GeoVera now moves for summary judgment, arguing that the undisputed facts establish that the Vacancy Exclusion precludes coverage for Jarvis's fire loss.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* (citation omitted). The interpretation of the language in an insurance policy is generally a question of law and is therefore amenable to summary judgment. *Miranda Constr. Dev., Inc. v. Mid-Continent Cas. Co.*, 763 F. Supp. 2d 1336, 1339 (S.D. Fla. 2010).

## III. Discussion

The Vacancy Exclusion precludes coverage for "[v]andalism and malicious mischief, if the dwelling has been 'vacant' or 'unoccupied' for more than 30 consecutive days immediately before the loss." Jarvis does not dispute GeoVera's assertion that the intentional burning of the

3

Dwelling constitutes vandalism or malicious mischief, and GeoVera's position is supported by Florida law.[1] *See Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 188 (Fla. 5th DCA 2015) (holding that "the plain and ordinary meanings of 'vandalism' and 'malicious mischief' include 'arson.'").

But the parties dispute whether the Dwelling was "'unoccupied' for more than 30 consecutive days immediately before the loss."[2] The Policy defines "unoccupied" to mean "the dwelling is not being inhabited as a residence." Jarvis admits that while the Dwelling had previously been occupied by a tenant, no one lived at the Dwelling from June 30, 2016 through October 12, 2016, the date of the fire. (Doc. 14, p. 2; Doc. 19, p. 2). Likewise, it is undisputed that the Dwelling was not being used as a residence on a day-to-day basis after the tenant vacated the Dwelling. (Doc. 14, p. 3; Doc. 19, p. 4). In fact, Jarvis specifically admits that the Dwelling had not been "inhabited as a residence" since the tenant moved out of the Dwelling. (Doc. 14, p. 3; Doc. 19, p. 4). Thus, the undisputed facts establish that the Vacancy Exclusion applies, unless the exception also applies.

The exception to the Vacancy Exclusion states that "[a] dwelling being constructed is not considered . . . 'unoccupied.'" And while it is undisputed that the Dwelling was being renovated, repaired and/or refurbished at the time of the fire, the parties disagree as to whether these projects qualify Jarvis's claim for this exception. The only remaining issue, therefore, is whether

---

[1] In a diversity matter such as this, state law generally governs the Court's analysis of substantive issues, such as the interpretation of an insurance policy. *Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 559 (11th Cir. 1983) (citations omitted). In this case, the parties agree that the substantive law of Florida governs.

[2] Jarvis also argues that there is an issue of material fact as to whether the Dwelling was "vacant," as defined in the Policy, because the Dwelling had all the necessary amenities and utilities to permit occupancy of the Dwelling as a residence. But the Vacancy Exclusion precludes coverage for a "'vacant' *or* 'unoccupied'" dwelling. (emphasis added). Because the undisputed facts clearly establish that the Dwelling was "unoccupied," the Court need not address whether the Dwelling was "vacant," and any disputed fact as to this issue is immaterial.

the "dwelling being constructed" language in the Policy includes a dwelling being renovated, repaired and/or refurbished. This is a question of law to be determined by the Court.

The parties have not cited, and this Court has not found, any Florida case law directly addressing this issue.[3] Consequently, the Court must endeavor to best predict how the Florida Supreme Court would decide the issue. *See Peller v. Southern Co.*, 911 F.2 1532, 1536 (11th Cir. 1990). The Court looks to Florida case law and the decisions and rationales from other jurisdictions that have decided this specific issue for guidance in making this determination. *See Ill. Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp. 2d 1336, 1374 (N.D. Ga. 2012) (citing *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir. 2002)).

"Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "Ambiguities in insurance contracts are interpreted against the insurer and in favor of the insured." *Garcia v. Fed. Ins. Co.*, 969 So.

---

[3] While Florida's Fourth District Court of Appeal interpreted similar policy language in *Sunrise Sports Cars, Inc. v. Britamco Underwriters, Inc.*, 782 So. 2d 1009 (Fla. 4th DCA 2001), it did not directly address the issue before this Court. In *Sunrise Sports Cars*, a policy was taken out on a parcel of land that contained a vacant restaurant that the insured planned to renovate and convert into a car showroom. *Id.* at 1010. While the insured hired an architect and had the city send inspectors to the property, the property was vandalized before any renovations took place or the proper permits were secured. *Id.* The policy at issue excluded vandalism claims on buildings that had "been vacant for more than 60 days before the loss," but it did not consider buildings "under construction" to be vacant. *Id.* The Court concluded that because the showroom was not built and was not in the actual process of being built, the showroom was not "under construction" and, therefore, was vacant. *Id.* But because the court concluded that the building was not "under construction" due to the lack of any construction activity, it did not address the issue of whether a building undergoing renovations is a building "under construction." Moreover, the policy language "under construction" in the *Sunrise Sports Cars* policy is materially different than the phrase "being constructed" in the GeoVera Policy. Consequently, *Sunrise Sports Cars* sheds little light on the issue before this Court.

2d 288, 291 (Fla. 2007) (citation omitted). To allow for such a construction, however, the provision must actually be ambiguous. *Taurus*, 913 So. 2d at 532. Moreover, a provision is not considered "ambiguous simply because it is complex and it requires analysis." *Garcia*, 969 So. 2d at 292 (citation omitted).

To interpret an exclusion in a policy properly, the exclusion must be read together with the other provisions of the policy and "from the perspective of an ordinary person." *Am. Strategic Ins. Co. v. Lucas–Solomon*, 927 So. 2d 184, 186 (Fla. 2d DCA 2006) (citation omitted). Courts are to look at the policy language to determine what a reasonably prudent insured would understand the language to mean. *Botee*, 162 So. 3d at 186. The failure to define a term involving coverage does not necessarily render the term ambiguous. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 166 (Fla. 2003). Instead, when a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and non-legal dictionary definitions to determine that meaning. *See Barcelona Hotel, LLC v. Nova Cas. Co.*, 57 So. 3d 228, 230–31 (Fla. 3d DCA 2011).

Here, Jarvis attempts to avoid the application of the Vacancy Exclusion by arguing that the phrase "dwelling being constructed" is ambiguous and that it is reasonable to interpret this phrase to include renovations, repairs, and refurbishments to a dwelling. The Court disagrees. The phrase a "dwelling being constructed" is unambiguous. The plain and ordinary meaning of the phrase contemplates bringing a dwelling into existence from the ground up. In other words, it is the creation of a complete dwelling that did not previously exist. This phrase does not, in its plain and ordinary sense, include renovations, repairs, or refurbishments to an already-existing dwelling.

Webster's Third New International Dictionary (2002) defines "construct" as "to form, make, or create by combining parts or elements." On the other hand, "renovate" is defined as "to restore to a former state (as of freshness, soundness, purity, or newness of appearance)." Webster's 3rd New Int'l Dict. 2002. "Repair" is defined as "to restore by replacing a part or putting together what is torn or broken . . . to restore to a sound or healthy state." *Id.* And "refurbish" is defined as "to brighten or freshen up: to make as if new." *Id.* Based on these definitions, "construct" suggests combining parts to create something new while "renovate," "repair, and "refurbish" contemplate the restoration or improvement of something already in existence. These terms are not synonymous. A dwelling being renovated, repaired and/or refurbished is not a "dwelling being constructed." Had the parties intended for the exception to apply to a dwelling where renovations, repairs, or refurbishing work was being performed, the policy language would reflect that intention.

This interpretation is consistent with case law from other jurisdictions. *See Sherman-Nadiv v. Farm Bureau Gen. Ins.*, 761 N.W.2d 872, 875 (Mich. Ct. App. 2008) (holding that the plain and ordinary meaning of the phrase "being constructed" refers to a house being erected but does not include repairs, remodeling, or renovation work); *Travelers Indem. Co. v. Wilkes Cnty.*, 116 S.E.2d 314, 317 (Ga. Ct. App. 1960) (construing the word "construction" in the phrase "in the process of construction" in windstorm policy to mean "the building or erection of something which theretofore did not exist; the creation of something new rather than the repair or improvement of something already existing"). *But see Vennemann v. Badger Mut. Ins. Co.*, 334 F.3d 772, 772 (8th Cir. 2003) (holding that remodeling must consist of "substantial continuing activities" to fall under the "being constructed" exception to vacancy exclusion) (citations omitted).

Likewise, this Court's interpretation is consistent with the purpose of the Vacancy Exclusion. As stated by the Seventh Circuit:

> Such a[n exception to a vacancy exclusion] balances a willingness to extend coverage through the construction period with a desire to guard against excessive vandalism that occurs when a dwelling is vacant, and the interpretation urged by plaintiff would intolerably alter this balance by greatly extending the "construction" period to include any time during which some repairs or renovations are being made. The "construction" period cannot go on forever.

*Myers v. Merrimack Mut. Fire Ins. Co.*, 788 F.2d 468, 472 (7th Cir. 1986) (construing exception to a vacancy exclusion for buildings "in the process of construction") (internal citations omitted). Accordingly, the Court concludes that renovations, repairs, and refurbishments to an already existing dwelling do not qualify for the "dwelling being constructed" exception to the Vacancy Exclusion in the Policy.

Here, the undisputed facts show that the Dwelling was not "being constructed" at the time of the fire. Instead, the Dwelling was already in existence but was being renovated, repaired and/or refurbished by Jarvis. As a result, the "dwelling being constructed" exception to the Vacancy Exclusion does not apply, the Dwelling was "unoccupied" at the time of the fire, and the Vacancy Exclusion applies to preclude coverage for Jarvis's loss.

## IV. Conclusion

Based on the foregoing, the undisputed facts establish that the Vacancy Exclusion in the Policy applies to preclude coverage for Jarvis's loss. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that GeoVera's Motion for Summary Judgment (Doc. 14) is **GRANTED**. The Clerk is directed to enter judgment in favor of GeoVera and then to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 5th day of July, 2017.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge